IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-4041-01-CR-C-NKL |
| | ) | |
| WESLEY CLARK JAMES, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and W.D. Mo. R. 22.

On March 22, 2006, defendant Wesley James filed a second motion to suppress evidence obtained during searches conducted in Moniteau and Morgan Counties, Missouri, in August 2004. On May 4, 2006, he filed supplemental suggestions. The Government responded in opposition to the motion, and a hearing was held on May 24, 2006.

As an initial matter, the Government notes that defendant James attempts to relitigate in this second motion issues that were previously before the court. Issues related to the sufficiency of the information in the application for the search warrant in Moniteau County (Counts I and II) were addressed at a hearing on September 16, 2005. A report and recommendation was issued on September 30, 2005. Accordingly, the issues addressed in that report will not be revisited. here.

Defendant James, however, now asserts that Officer Anthony Wheatley's application for the search warrant in Moniteau County, Missouri, contained intentional false statements or statements made with reckless disregard for the truth. He requests those statements be excised from the affidavit and then a separate determination be made whether the remaining facts contain probable cause to support the issuance of a warrant.

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their

affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, 926 (1984). The affidavit in support of the search warrant is entitled to a presumption of validity. Franks v. Delaware, 438 U.S. 154, 171 (1978). Thus, to succeed on his motion to suppress, defendant James must come forward with sufficient reliable evidence to overcome the presumption of validity, and then show that without the inaccuracies, the affidavit lacked probable cause for the issuance of the warrant.

James asserts that Officer Wheatley attributed information to Jason Rayborn that Rayborn says he did not provide. At the hearing, defendant called Rayborn to testify. Rayborn stated he had been at the James' residence on August 19, 2004, working on a computer. When he left, he was stopped by Officer Wheatley. Rayborn said Wheatley asked for his driver's license, asked why he was at the house, and then asked questions about the house, its occupants and its contents. Wheatley's affidavit states Rayborn told him that James wanted him to install a video surveillance for the residence, that he had seen methamphetamine pipes and other drug paraphernalia in the house, that he had delivered a safe to the house which was now in a rear room with some of the paraphernalia in it, that Robert Barnett was in the house when the officers first knocked, and that Kevin Stinson, Wesley James and Kevin's girlfriend, Lindsey, were still in the house. Rayborn denied providing any of this information.

Rayborn states he was asked if he had seen anything drug related at the house and if he had installed a surveillance system in the house. He responded that James had asked about the cost of a surveillance system, but had never asked him to install one and that he had not seen drug-related items. When the officer asked him about a safe in the house, Rayborn states he told Wheatley there was a safe sitting in the middle of the living room, wide open, with some warranty-type papers in it, but that he didn't know anything else about it.

Rayborn testified that Wheatley kept Rayborn's driver's license on the false basis that his license was suspended, that officers tore his vehicle apart and took everything out of it, and that he was questioned for thirty to forty five minutes before being permitted to drive away. On cross-examination, he stated he did not hear anyone knock on the James' residence while he was there and he would have heard it if it had occurred.

Rayborn acknowledged he was personal friends with, and had business dealings with, defendant James. Some time prior to the hearing, he had talked with the defendant about the

2

statements in the affidavit that were attributed to him.  Rayborn, who states he is disabled, had taken his prescribed amount (60 mg) of morphine that morning for pain relief, but testified it did not impact his memory at the time.

The Government called Tony Wheatley and James Williams to testify.  Wheatley said he and other officers initially went to the residence to do a "knock and talk," but no one answered their knocks on the front or back doors.  They decided to run surveillance on the house and observed two individuals leave separately, one of whom was Rayborn.  Both individuals were stopped and identified.  Rayborn was asked why he didn't answer the door when officers knocked.  Wheatley stated Rayborn was nervous and evasive, but eventually told him that people were inside the house when the officers knocked, the people were nervous and started moving around and hiding things.  Rayborn left because he didn't want to get involved or get into any more trouble.

Wheatley said Rayborn told him he had delivered a safe to the house a couple of days earlier; he saw a methamphetamine pipe and meth paraphernalia at the house, which he thought had been moved to the safe; and Barnett had been in the house but left about the same time as he did.  Wheatley stated Rayborn identified the people in the house and told him James had approached him about installing surveillance equipment in the house.

Wheatley indicated Rayborn gave permission for the search of his vehicle, nothing was removed or taken from the vehicle, and Rayborn was permitted to leave after being advised not to call the house.  He thought Rayborn had been detained for approximately 10 minutes, and he didn't recall whether he took Rayborn's license.  He remembers some discussion about whether Rayborn's license was suspended, but not the details, and does not recall any conversation about prescription medication.  He did not know Rayborn prior to the stop and Rayborn was not a target of the investigation.  What was significant about Rayborn was his nervousness and the information he provided.

Officer Williams testified he participated in many of the events of August 19.  He was present when officers first knocked on the James' residence, during the surveillance, during part of the time Rayborn was stopped and his vehicle was searched, and also when the search warrant was executed.  He did not hear the conversation between Wheatley and Rayborn, but was told Rayborn consented to the vehicle search.  He remembers doing a cursory search of the vehicle

3

for weapons, but stated he didn't remove anything from the vehicle and he didn't see any items from the vehicle on the ground. He believes Officer Black conducted a moderately thorough search but did not see the vehicle being torn apart. He wasn't sure how long the stop lasted because he had been at a different location when the stop initially occurred, but thought he was present for about fifteen minutes before Rayborn left in his own vehicle.

After considering the evidence as a whole, the court finds defendant James has not overcome the presumption of the validity of the affidavit or shown that it contained deliberate falsehoods or reckless disregard for the truth. The affidavit was prepared on a laptop computer in Wheatley's vehicle, near the residence, within a very short time after Rayborn was stopped. The information attributed to Rayborn was corroborated when the warrant was executed. No explanation for the accuracy of that information has been provided, other than that set forth in Wheatley's affidavit and testimony that it came from Rayborn.

Rayborn's testimony before the court was only partially credible. He testified his license was not suspended at the time he was stopped and that Wheatley kept his license. His driving record, submitted after the hearing, shows his license was suspended between May 19, 2003, and October 13, 2004, and that at some time during the late summer and early fall, his license was being held by the Breckenridge Hills Municipal Court for failure to appear for a traffic violation. Likewise, his testimony that officers tore his vehicle apart and left things on the ground is clearly at odds with the testimony of both officers. His friendship and business dealings with defendant give him motive for wanting to help James. Further, his prescription drug use for pain relief and the apparent delay in his being asked to recollect the events of that day call into question the clarity of his memory. This court believes the testimony of Officer Wheatley that Rayborn told him that people heard the knock on the door and were hiding things, and that meth paraphernalia was inside.

For these reasons, defendant's motion to suppress on the basis that the warrant affidavit contained deliberate falsehood or reckless disregard for the truth is recommended denied.

Defendant James next seeks to suppress the evidence obtained from property located west of 1410 South Fork Lane, identified as Lot G in Morgan, County, Missouri. Defendant asserts the application for a search warrant and the subsequent warrant did not meet the appropriate legal standards. The Government responded in opposition to the motion on the basis

that the search was conducted in an open field, and was, therefore, subject to the "open fields doctrine," which permits a search without a warrant.

In light of the motion and response, an evidentiary hearing on this issue is not required. The following facts were set forth in the motion, which quoted from the application for the search warrant submitted by Officer Williams.

On August 20, 2004, Sgt. Don Isaac of the Mid-Missouri Task Force received information from a confidential source that Wesley James had buried an anhydrous ammonia tank on his property in the West Fork Subdivision in Morgan County, Missouri. On the afternoon of August 21, two law enforcement officers met with Sgt. Isaac at a location just west of 1410 South Fork Lane. An individual at 1410 South Fork Lane told one of the officers that Wesley James owned the two lots immediately to the west. The officers walked onto the lots, which were open fields, and found items which they believed were used in or could be used in the manufacture of methamphetamine. Some of those items were seized and Officer Williams then applied for a search warrant for the property. In addition to the other facts, Williams noted there was a valve with blue discoloration protruding from the earth, the earth was freshly turned, and they believed the valve contained anhydrous ammonia. After obtaining a search warrant, officers seized additional items, including a fuel tank containing anhydrous ammonia and a can of Xylol, which were buried on the property.

There is no dispute the Morgan County, Missouri, land was an open field, and not property surrounding or within the curtilage of defendant's residence. It was an unoccupied, brushy area of land with no improvements or outbuildings. The Fourth Amendment permits law enforcement officers to search an open field without a warrant. United States v. Oliver, 466 U.S. 170 (1984); United States v. Boyster, 436 F.3d 986 (8th Cir. 2006). Accordingly, defendant's motion to suppress on this issue is recommended denied.

In supplemental suggestions filed on May 4, 2006, defendant seeks suppression of evidence concerning the items seized and then destroyed by the Morgan County Sheriff's Department. James asserts that the destruction of the items seized by Officer Williams in Morgan County denies him due process of law and substantially prejudices him.

A number of items were seized during a search on August 21, 2004. Some of the items were preserved and others were not preserved. A series of 18 black and white photographs were

5

taken of the items seized on August 21, 2004, and later destroyed. The items identified as D33-10A, D33-11A and D33-11B were preserved and are available to defendant James for retesting. James suggests that the destruction of the vast majority of the evidence constitutes bad faith, which requires the court to suppress the photographs and testimony with regard to those items.

The Government responds in opposition to defendant's motion. Plaintiff acknowledges the items were destroyed, but indicates they were disclosed, and images were preserved by photographs and video. Additionally, Williams' property summary report identifies the locations where the items were recovered, and certain samples of suspected controlled substances were preserved for testing and are available for retesting.

The Government asserts that items and chemicals used in the illicit manufacture of methamphetamine are dangerous to the environment and dangerous to store. Thus, the items were disposed of pursuant to the officer's training, departmental policies, and in accord with environmental regulations.

Defendant James has come forward with no evidence to show the Government acted in bad faith, the evidence had apparent exculpatory value, or that comparable exculpatory evidence is not available. See United States v. Malbrough, 922 F.2d 458 (8th Cir. 1990); California v. Trombetta, 467 U.S. 479 (1984). The Government has stated legitimate reasons for disposal of the items and the trial court can limit testimony, as needed, to prevent any prejudice to the defendant. For example, the trial court could permit testimony that a fire extinguisher was seized at a particular location and show a photograph of it, and could prohibit testimony that the fire extinguisher contained anhydrous ammonia if testing was not done on it and it was not available to defendant for retesting. Thus, any potential prejudice can be addressed at trial.

For these reasons and those set forth in more detail in the Government's suggestions, it is

RECOMMENDED that defendant James' motions of March 22 and May 4, 2006, to suppress evidence be denied. [37, 41]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985));

Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983).  Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 27th day of June, 2006, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge