IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4041-01-CR-C-NKL |
| ) | |
| WESLEY CLARK JAMES, ) | |
| ) | |
| Defendant. ) | |

ORDER

On September 30, 2005, United States Magistrate Judge William A. Knox recommended that the Court enter an Order denying Wesley James's Motions to Suppress Physical and Tangible Evidence [Docs. ## 11, 17]. *See* Report and Recommendation [Doc. # 20]. James, through his attorney, filed objections on October 17, 2005 [Doc. # 25]. Having conducted an independent review of the record and considered James's objections, the Court concludes that Judge Knox's Report and Recommendation is correct and should be adopted.

On August 19, 2004, the Moniteau County Prosecuting Attorney submitted a search warrant application along with Officer Anthony Wheatley's supporting affidavit to a Moniteau County, Missouri, Associate Circuit Judge. The application asked that a search warrant be issued for James's home in Moniteau County, Missouri. James argues that the application and supporting affidavit were insufficient to establish the existence of probable cause, and thus, the search warrant should not have been issued.

1

To determine whether probable cause exists to issue a search warrant, the issuing judge "make[s] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983). The decision to issue a warrant will not be disturbed so long as the issuing judge had a substantial basis for concluding that probable cause existed. *Id.* at 238-39.

Officer Wheatley's affidavit included the following facts in support of the search warrant application:

> I have received several reports of suspicious activity at the residence located at 509 Ohio street in Tipton Missouri and that a subject who resides there a Wesley James was distributing and possibly manufacturing methamphetamines in that residence. While on routine patrols I have noticed several vehicles coming to and from this residence each staying for short periods of time. Upon checking these vehicles several of them have been known to me to be involved in the use and or possession of illegal drugs. I then received additional information on 08/17/2004 that Mr. James was at the Wal-Mart store located in Jefferson City, Missouri at approx 14:45 hrs purchasing pseudoephedrine which is known to me the be the basic ingredient for manufacturing methamphetamines. I then received information from Deputy Don Isaac of the Mid-Missouri Drug Task Force on 08/18/2004 that he had spoken to an individual who resides by Mr. James and that they stated that they have been noticing a high volume of traffic in and out of Mr. James residence located at 509 Ohio street at all hours of the night.
>
> On 08/19/2004 I along with the Tipton Police Department, and other members of the Mid-Missouri Drug Task Force proceeded to 509 Ohio street in Tipton, Missouri to try and make contact

2

> with Mr. James. Upon our arrival at the residence I did observe
> four vehicles parked at the residence. One vehicle a white Dodge
> pickup belonging to Mr. James, One red and silver Chevrolet
> Pickup belonging to a Robert Barnett, One red passenger car
> belonging to a Jason Rayburn, and a white passenger car
> belonging to a Lindsey which is known to be driven by a Kevin
> Stinson. We then proceeded to the door of the residence and
> proceeded to knock. We continued to knock for several minutes
> with no one answering the door. We then left the residence and
> proceeded to observe it from a distance. Upon observation one
> subject was seen leaving the back door of the residence and go
> into the alley. This subject was contacted and identified as a
> Robert Barnett. Upon speaking to Mr. Barnett he stated that he
> was not at the james house he had just left his vehicle there. Upon
> questioning about his vehicle he refused to give any information.
> A second subject then walked out the front door of the residence
> and left in the red passenger car. Contact was then made with
> this subject who was identified as a jason Rayburn. Upon
> speaking with Mr. Rayburn he stated that he was inside working
> on a computer for Mr. James and that Mr. james wanted him to
> install a video surveillance for him on his residence. Mr.
> Rayburn then stated that he did not know what all was going on
> in the residence but he did see Methamphetamine pipes and other
> meth paraphernalia in the house and that he did not need to get
> into anymore trouble and that is why he left the house. Mr.
> Rayburn then stated that Kevin Stinson, Wesley James and
> Kevins girlfriend Lindsey were still in the residence and that
> Robert Barnett was inside the house when we came to the door
> and knocked. Rayburn also stated that he did deliver a safe to the
> residence which is located inside the rear room of the house and
> that is where they had put some of the methamphetamine
> paraphernalia. We then proceeded back to the residence and
> knocked again with no one coming to the door. The residence
> remains under surveillance.

Officer Wheatley's August 19, 2004 affidavit indicates that, on August 19, 2004, he received information from Rayburn that drug paraphernalia was inside James's home. The affidavit also indicates that, on August 17, 2004, Wheatley learned that James had

3

purchased the basic ingredient for making methamphetamine, and, on August 18, 2004, Wheatley learned that a high volume of traffic was coming in and out of James's residence at all hours of the day and night.

James argues that the affidavit does not support probable cause because it does not name the informants providing information and does not indicate when such information was obtained. (Doc. 11, ¶ 9). The affidavit, however, clearly indicates when Wheatley learned the evidence. Furthermore, a significant portion of the information was corroborated by Wheatley's own investigative work in that he also witnessed several vehicles coming to James's house, staying for only a short period of time. Wheatley checked some of these vehicles and learned that some of them were owned by individuals known to be involved in illegal drug use or possession. The affidavit contains sufficient specific information from which a judge could conclude that there exists a fair probability that contraband or evidence of a crime would be found inside James's home. Accordingly, the Court finds that the issuing judge had a substantial basis for concluding that probable cause existed. Therefore, the search warrant was valid.

James also objects to the Magistrate's holding that the warrant was facially valid. "[A] warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405 (1984). For example, a warrant that fails to specify the place to be searched or the items to be seized is a facially deficient warrant. *Id*. Without citation, James argues that the warrant in this case was facially deficient because "it did not demonstrate that it was based upon

4

the information possessed by Officer Wheatley." (Doc. 25, ¶ 6(b)).  The Court is unaware of any case that stands for the proposition that a warrant must identify the source of the information upon which it relies in order for an officer executing the warrant to reasonably presume its validity.  Regardless, the warrant in this case indicated that it was based upon a written application, verified by oath, which was filed with the judge on August 19, 2004, and which stated that "certain property, articles, materials, substances or persons are subject to seizure as authorized by § 542.271 RSMo."  (Warrant at 1).  In addition, the warrant indicates the place to be searched and the items to be seized.  (Warrant at 1).  Accordingly, the Court finds that the warrant was facially valid.

Because the Court finds that the issuing judge had probable cause to issue the warrant, the Court need not address James's exception to the portions of the Report and Recommendation holding that the good faith exception applies.  The Court also need not address James's argument that his Motion to Suppress should be granted because certain documents, including the warrant, the warrant inventory and receipt for property taken, were not signed or dated.  James withdrew these arguments at his September 16, 2005 hearing and represented that the only remaining issue was whether the application established probable cause.  (Tr. 3).

Based upon the evidence presented, the Court finds no basis for granting James's Motions to Suppress [Docs. ## 11, 17].

Accordingly, it is hereby

ORDERED that Judge Knox's Report and Recommendation of September 30, 2005 [Doc. # 20], is adopted.

S/NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated:   April 23, 2007  
Jefferson City, Missouri